Albert J. Soler (AS1974)
Ajoe P. Abraham (AA7000)
Soler Salva LLP
270 W. 39th St., Suite 1304
New York, NY 10018
Tel: (646) 660-1961
Email: asoler@solersalva.com
Email: aabraham@solersalva.com

*Attorneys for Plaintiff Prime Entertainment Group LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRIME ENTERTAINMENT GROUP LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> 43 NORTH BROADWAY, LLC, a New York limited liability company; and DOES 1-10. <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** |

## <u>COMPLAINT</u>

Plaintiff, Prime Entertainment Group, Inc. (herein "Plaintiff" or "PEG"), a Nevada limited liability company, by and through its undersigned counsel, hereby submits its complaint against 43 North Broadway, LLC (herein "Defendant" or "43 North") and alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      PEG is an authorized licensing agent and the rights administrator of certain master sound recordings catalogs, including its own catalog and those owned and controlled by third-party owners of such master recordings.

1

2.      PEG is an authorized licensing agent for several sound recording catalogs owned by third parties which include master sound recordings by, among others, the late Arthur "Big Boy" Crudup, an American blues singer, guitarist, and songwriter (herein "Crudup") best known, perhaps, for his recordings of "That's All Right" and "My Baby Left Me."

3.      PEG is also the owner of thousands of valuable and highly licensable master sound recordings that are distributed across numerous music streaming platforms by PEG's contractually authorized third-party distributors.

4.      PEG, at all relevant times, was, and is, a duly authorized representative and licensing agent of Gulf Coast Music LLC ("GCM") pursuant to an Appointment of Sales Agent Agreement dated November 30, 2000.

5.      In or around 2017 and 2018, after a series of negotiations and an ultimate agreement with Fuel 2000 Records, Inc. (herein "F2K"), which,  at that time, owned and/or controlled on a licensed basis various rights to catalogs of master sound recordings, including sound recordings comprising the PEG Catalog and GCM Catalog (as defined herein) (the "Licensed Recordings"), 43 North (a) purchased from F2K certain non-exclusive rights to exploit and distribute the catalogs of the Licensed Recordings and (b) became F2K's successor-in-interest with respect to various royalty payment and accounting obligations to which 43 North succeeded and would, post-acquisition owe to various third-party rights holders.

6.      Notably, 43 North's dealings and agreement with F2K with respect to PEG, PEG's own catalog of recordings, and with respect to GCM and GCM's catalog of recordings, to the extent those catalogs comprised part of the Licensed Recordings that F2K was entitled to distribute on a non-exclusive, royalty-bearing basis, *did not grant nor otherwise convey* to 43 North any

copyright or other ownership interest to the Licensed Recordings, which were included in the catalogs belonging, in part, to PEG, GCM, and other third parties.

7.      Importantly, 43 North has acknowledged and confirmed via emails and related communications that PEG, on its own behalf and as an authorized agent on behalf of GCM via the F2K-43 North Agreement (as defined herein), had granted 43 North a limited non-exclusive, perpetual, worldwide license to exploit certain catalogs of non-exclusively licensed master recordings, including the Crudup Recordings.

8.      Nonetheless, 43 North has engaged in – *and continues to engage in* – the improper circulation and dissemination of copyright-based "take-down notices" to music streaming platforms, including Spotify, improperly claiming that 43 North is the exclusive owner of the Crudup Recordings, the copyrights thereto, and exclusive rights to other third party master sound recordings, none of which are owned by 43 North.

9.      Upon information and belief, 43 North has contacted other streaming platforms asserting the same baseless claims of copyright ownership and exclusive control over master sound recordings that (a) were licensed to 43 North and (b) the use of which subjected, and continues to subject, 43 North to explicit royalty payment and accounting obligations pursuant to the binding agreements discussed below.

10.     43 North's improper conduct continues to prejudice and significantly harm not only PEG and GCM, but also the *numerous third-party rights holders* whose performances are embodied in the Licensed Recordings.

11.     43 North continues to use and exploit the Licensed Recordings, but the royalties owed to PEG, GCM, and the third-party owners of the Licensed Recordings remain unpaid due to

43 North's brazen disregard of its assumed contractual obligations and its improper claims of copyright and ownership interests to sound recordings that 43 North licensed but does not own.

12.    PEG brings this action to seek redress for 43 North's improper and intentional attempt to assert rights over master sound recordings in the PEG Catalog and GCM Catalog that are owned, not by 43 North, but by PEG and GCM, respectively.

## THE PARTIES

13.    Plaintiff Prime Entertainment Group, LLC is a limited liability company organized under the laws of the State of Nevada with a principal place of business located at 8033 Sunset Boulevard #1250, Los Angeles, California 90046.

14.    Upon information and belief, Defendant 43 North Broadway, LLC is a limited liability company organized under the laws of the State of New York with a principal place of business in this judicial District.

## JURISDICTION AND VENUE

15.    This Court has federal authority to render a declaratory judgement pursuant to the Federal Declaratory Judgements Act, 28 U.S.C. §§ 2201 and 2202.

16.    The Court has diversity jurisdiction over the instant dispute and parties pursuant to 28 U.S.C. 1332(a)(1), which confers original jurisdiction upon the federal district courts over all civil actions wherein the amount in controversy exceeds $75,000 and the dispute is between a citizen of different states (i.e., Nevada and New York).

17.    This Court has personal jurisdiction over Defendant because Defendant is a limited liability company organized under the laws of the State of New York and its conduct, as alleged in this Complaint, was purposefully directed at, among others, music streaming platforms, internet platforms, individuals, and music distribution platforms who are located in, have a significant

presence in, or transact substantial business in the State of New York.

18.     Venue is proper in this judicial district for all causes of action pursuant to 28 U.S.C. §§1391(b)(1) & (b)(2) and 1400(b) in that Defendant resides in and transacts business in this Judicial District and a substantial part of the events or omissions giving rise to the claims herein occurred within this Judicial District.

## FACTUAL BACKGROUND

19.     PEG is an authorized licensing agent and administrator of various sound recording catalogs, including (a) PEG's own sound recording catalog (the "PEG Catalog") and (b) sound recording catalogs owned by GCM, including, among others, the GCM distributed catalogues known as: Fire Records and Fury Records, Red Robin Records, Whirlin' Disc, Everest Records, and Enjoy Records (collectively, the "GCM Catalog").

20.     GCM's founder, the late Marshall E. Sehorn, was the Artist and Repertoire (A&R) director for Fire & Fury Records, had a direct relationship with the late Bobby Robinson, the legendary founder of Fire & Fury Group fame and was, in fact, Mr. Robinson's employee as far back as the early 1960s.

21.     The Sehorn-Fury-Fire Agreement (as defined herein) evidences the fact that GCM obtained non-exclusive perpetual rights to the recordings comprising the Fury Records and Fire Records music catalogs, which include, among others, the Crudup recordings that 43 North continues to wrongfully claim ownership of. Mr. Sehorn's rights were then transferred in their entirety to GCM, who then granted to PEG the non-exclusive right to license the recordings on GCM's behalf.

22.     PEG and GCM are also signatories, licensee parties, and/or successors in interest to various licensing agreements and related contracts regarding the licensing and administration of

sound recording catalogs owned exclusively by record labels Vault Records, Janus Records, and Applause Records.

23.    As noted, PEG was and is a duly authorized representative and licensing agent of GCM pursuant to an Appointment of Sales Agent Agreement dated November 30, 2000.

24.    As an authorized representative and licensing agent of GCM, PEG is the administrator of rights in and to master sound recordings which are owned or otherwise licensed in perpetuity to GCM, including the recordings comprising the GCM Catalog, which includes the Crudup recordings.

25.    Several of the Crudup recordings, including "Looka There, She Got No Hair," "Death Valley Blues," and "That's All Right," which were all the subject of 43 North's numerous improper infringement take-down notices, are *expressly listed* as an exhibit to a November 16, 1962 agreement between Mr. Sehorn and Fury Records, Inc and Fire Records, Inc. (the "Sehorn-Fury-Fire Agreement").

26.    Both the PEG Catalog and the GCM Catalog contain thousands of highly licensable and sought-after sound recordings and titles whose success and continuing popularity span across multiple decades and a wide variety of musical genres.

27.    On March 31, 2001, GCM entered into a license agreement with F2K, an entity owned, controlled, and operated by record label executive, artists personal manager, and concert producer/promoter Leonard C. Fico (herein "Fico").

28.    Pursuant to the terms of the license agreement, GCM granted to F2K, among other things, the exclusive right to manufacture physical sound recordings in its catalog, as well as the non-exclusive right to otherwise use and license such recordings in non-physical forms. Such licensed rights were, as to physical products, authorized by GCM to be utilized by F2K exclusively

in and throughout a contractually prescribed territory and non-exclusively as to all other uses throughout the world, in exchange for specified royalties payable to GCM (the "GCM-F2K License Agreement").

29.    F2K, therefore, was an authorized licensee of the entirety of the sound recording catalog licensed by GCM pursuant to the terms and conditions of the GCM-F2K License Agreement, including both an ability to grant sub-licenses to third parties and to assign its contractual rights – subject to an assumption of its corresponding obligations – to successors such as 43 North.

30.    Section 4 of the GCM-F2K License Agreement required that F2K, as the licensee, pay GCM royalties in various amounts based, in the case of physical products, on their suggested retail list price and in all other instances in an amount equal to fifty percent (50%) of F2K's revenues derived from all uses other than the sale of physical goods.  All such accounting and payment obligations were, and remain, a condition of the use, distribution and sale of sound recordings of any kind derived from the Licensed Recordings.

31.    Thus, F2K was obligated to account for and pay any royalties to GCM in accordance with the terms of the GCM-F2K License Agreement. PEG, as GCM's authorized agent, is entitled to bring this action to collect the royalties due and to otherwise enforce GCM's rights against 43 North.

32.    Next, pursuant to a March 1, 2002 Asset Purchase Agreement entered into by and between PEG and F2K (the "PEG-F2K APA)", PEG[1] sold and conveyed to F2K all right, title, and interest to PEG's library of the "non-exclusive musical masters" referenced in Exhibit A of the PEG-F2K APA.

---

[1] The majority control of PEG was eventually purchased by Fico's Nasjon Properties LLC in or about May 2020.

33.     As noted, however, PEG remained, at all times, a duly authorized licensing agent for both the PEG Catalog and the GCM Catalog of sound recordings.

34.     Specifically, the PEG-F2K APA unequivocally stated that F2K was acquiring the "non-exclusive" master sound recordings in Exhibit A in exchange for the purchase price, which included a perpetual fifty percent (50%) participation in the net receipts emanating from F2K's continuing exploitation of the non-exclusive master recordings and all rights therein.

35.     As to royalties, Section 3.6 of the PEG-F2K APA required that F2K, as the purchaser, continue to pay or cause to be paid all royalties which may become due to any third-party royalty recipients pursuant to any applicable contract between the third parties and PEG or its predecessors in interest.

36.     The PEG-F2K APA was binding on F2K, as well as on any of its assignees, successor and assigns, including 43 North.

37.     PEG remained the licensing agent and administrator of the PEG and GCM Catalogs of music and F2K was obligated to direct all subsequent participating royalty payments resulting from the use of the Licensed Recordings to PEG.

**43 North's Acquisition of F2K's Right to the Licensed Masters**

38.     Pursuant to an October 13, 2015 Asset Purchase Agreement entered into by and between F2K and 43 North (the "43 North-F2K APA"), 43 North acquired from F2K rights to certain sound recording assets.

39.     Specifically, 43 North (a) acquired rights related to certain master sound recordings and (b) assumed F2K's pre-existing and ongoing contractual obligations to third parties, including PEG, GCM and various owners or other royalty recipients (e.g., recording artists) of the Licensed Recordings.

40.    Pursuant to the agreement, 43 North was, and is, obligated to account for and pay royalties to all such royalty recipients, including PEG and GCM.

41.    Specifically, Section 1.01(a) of the 43 North-F2K APA, specifies that 43 North acquired F2K's interests in "the sound recordings owned, controlled, *or licensed* by" F2K (*emphasis* added), as set forth in Schedules A, A-1, and A-2 of the 43 North-F2K APA.

42.    Importantly, Schedule A-2 clearly lists and *identifies the Licensed Recordings* that had (a) been licensed by F2K in perpetuity and (b) which F2K did not own.

43.    Therefore, 43 North *did not, and could not have*, obtained copyrights or other ownership or title to master sound recordings that F2K did not, at any point, own.

44.    43 North was, at all times, aware that F2K did not own the copyrights to the Licensed Recordings (listed in Schedule A-2) and clearly understood that 43 North had become nothing more than an authorized licensee of the sound recording catalogs F2K controlled and administered – but did not own.

45.    Other than having certain limited exclusive rights related to the manufacturing and sale of physical products, the fact is that 43 North, with respect to the digital uses of the Licensed Recordings, (a) negotiated for and obtained non-exclusive worldwide rights to the Licensed Recordings in perpetuity and (b) was assigned and succeeded to the licensing agreement previously in place between F2K and PEG.

46.    Section 1.01(b) through (d) clearly state that 43 North was subject to the terms and conditions of the (a) recording agreements and licenses "with the recording artists," (b) all other agreements pertaining to the master sound recordings, including agreements with third-party rights holders, and (c) all agreements between F2K and third-party rights holders.

47.     In fact, an assignment and assumption agreement was appended as part of the 43 North-F2K APA, wherein 43 North became the successor-in-interest to the pre-existing agreements entered into by F2K and third-party rights holders.

48.     In light of the above, 43 North's improper take-down notices to streaming platforms asserting claims of ownership of the Licensed Recordings and their failure to pay the royalties 43 North contracted to pay is brazen and highly improper.

49.     43 North, as successor-in-interest to the F2K agreements, including the agreement with PEG, was also obligated to pay PEG a licensing royalty in the amount of fifty percent (50%) pursuant to the terms and conditions of the non-exclusive licenses 43 North obtained.

50.     Nonetheless, 43 North has, and continues to refuse to pay both PEG, GCM, and third-party rights holders since, at least, 2017.

51.     The 43 North-F2K APA also obligated 43 North to remit royalty and other payments to PEG and GCM for the use of their respective catalogs of music.

52.     In the case of GCM, such royalties for the sale of physical products were based on the various suggested retail list selling prices of recordings derived from the Licensed Recordings and in the case of digital sales, a continuing royalty equal to fifty percent (50%) of all of 43 North's gross sums received from its digital use of the same.

53.     The contractual terms set forth in the relevant agreements are clear and unequivocal, yet 43 North continues to intentionally breach their contractual obligations to the detriment of PEG, GMC, and third-party rights holders to the Licensed Recordings.

54.     PEG has demanded – *for years* – that 43 North comply with their obligation to pay all requisite third-party royalties including, among others, emails to 43 North in 2016, 2017, 2018, and 2019.

55.     For example, in a January 3, 2019 email, PEG states that 43 North had failed to provide "a report, statement or payment on statements" since 2015 and that PEG did not "understand what [43 North was] doing." The email also reflects the fact that 43 North was avoiding PEG in efforts to avoid or delay discussion or addressing of the royalty payment obligations and breach thereof.

56.     Not only has 43 North breached their duty to account to PEG and the rights holders, but 43 North has dishonestly claimed exclusive ownership of the sound recordings contained in the PEG and GCM Catalogs in attempts to circumvent and usurp PEG and GCMs' continuing rights,

57.     As discussed, 43 North has neither right nor title nor copyright to any of the PEG and GCM-owned sound recordings and only a non-exclusive right to use the Licensed Recordings subject to, at all times, 43 North's ongoing royalty payment obligations.

### 43 North's Improper Claim of Ownership of The Licensed Music and of the PEG and GCM Owned Master Sound Recordings

58.     Notwithstanding that 43 North *neither* owned title *nor* copyright in or to the Licensed Recordings, 43 North has – and continues to – improperly assert a claim of copyright ownership of and exclusive ownership and control of the non-exclusive Licensed Recordings and has repeatedly contacted popular music streaming platforms asserting the same false claims.

59.     43 North has circulated several infringement notices to streaming giants Spotify and Apple Music improperly claiming copyright ownership to the Licensed Recordings, which is an intentional and willful breach of the terms and conditions of the 43 North-F2K APA.

60.     On October 19, 2023, for example, RedEye Worldwide ("RedEye"), PEG's authorized distributor of the Licensed Recordings (via its agreement with its authorized digital rights agent, The Great American Music Company LLC ("GAMC"), a current distributor of the

11

PEG and GCM Catalogs notified PEG that it had received an infringement claim from streaming giant Spotify.[2]

61.     The infringement claim was highly improper because PEG (via PEG's agreement with GAMC) is, and remains, a licensing agent and administrator of the Licensed Recordings to the full extent of PEG's and GCM's respective rights therein, meaning that RedEye has the right and authority to distribute the Licensed Recordings.

62.     As such, RedEye was not – *in any manner* – infringing upon any third-party intellectual property rights as 43 North improperly alleged and falsely claimed.

63.     The impropriety of 43 North's conduct is highlighted by the fact that the October 19, 2023 infringement notice improperly claimed ownership of the song "Here Come The Girls" by artist Ernie K-Doe, a sound recording that is part of the PEG Catalog and which 43 North licensed, does not own, and for which 43 North has failed to remit royalty payments to PEG.

64.     On March 5, 2025, RedEye notified GAMC on behalf of PEG that it had received another infringement claim from streaming giant Spotify, which suggests that 43 North's improper circulation of infringement claims has been ongoing for years.

65.     43 North's March 5, 2025 infringement claim was, again, improper because PEG is the administrator of the Licensed Recordings to the full extent of PEG's and GCM's respective rights therein, meaning that RedEye, via its distribution agreement with GAMC, therefore has both the right and authority to distribute the Licensed Recordings owned by PEG, GCM, and third-parties.

---

[2] As background, copyright holders and owners, or their agents, may submit a notice of alleged copyright infringement if such copyright holders or owners believe that any music or materials available on streaming platforms, including Spotify, are being infringed upon or violated by a third party.

66.     Again, RedEye was not infringing upon any third-party intellectual property rights as 43 North has improperly alleged and asserted.

67.     43 North's March 5, 2025 notice improperly claimed ownership of, for example, Crudup's song "If I Get Lucky" when the sound recording, again, belongs to Fire and Fury and PEG is an authorized licensing agent.

68.     43 North's infringement claim also alleged that RedEye was purportedly infringing on sound recordings by Crudup, specifically (a) "Looka There, She Got No Hair," (b) "Death Valley Blues," (c) "That's All Right," (d) "My Mama Don't Allow Me," and (e) "Mama's Still Got The Blues" (the "Crudup Recordings").

69.     Contrary to 43 North's assertions, RedEye was not infringing upon 43 North's "ownership rights" to the Crudup sound recordings in any manner, since 43 North *neither* owns the title *nor* the copyright to any of the Licensed Recordings but was merely a successor-in-interest to F2K's perpetual license and non-exclusive rights to the Licensed Recordings pursuant to the express terms and conditions of the 43 North-F2K APA.

70.     43 North's conduct is brazen and improper because 43 North was fully aware that (a) 43 North had only been granted no more than a *non-exclusive license* to the Licensed Recordings pursuant to the 43 North-F2K APA and (b) that 43 North had not been granted ownership rights or title to the Licensed Recordings nor in any copyrights therein.

71.     43 North's illegitimate claims were also, as noted, improperly depriving PEG and GCM respectively of revenue, royalties, and payments owed related to the exploitation of PEG's and GCM's Licensed Recordings.

72.     43 North improperly alleges that it had acquired "all assets of Fire/Fury via acquisition [including] all rights in and to the sound recordings (and copyrights thereto) owned, controlled or licensed by Fire/Fury including the Masters."

73.     However, the 43 North-F2K APA clearly states that 43 North was only granted a non-exclusive license in perpetuity to exploit the Licensed Recordings, which includes the Crudup sound recordings cited in 43 North's infringement notice and claim to Spotify and others.

74.     43 North's improper circulation of false infringement claims has, and continues to, adversely affect PEG because, among other things, 43 North's improper conduct interferes with PEG's lawful status and rights as the licensing agent and administrator of both the PEG and GCM Catalogs, as well as third-party rights holders.

75.     For the sake of clarity, 43 North's non-exclusive rights to the Licensed Recordings does not in any way diminish, restrict, or supersede the identical continuing non-exclusive, worldwide, perpetual rights of PEG and/or GCM in the same recordings, which renders 43 North's false claims of ownership of recordings that 43 North merely licensed patently improper.

76.     43 North has by virtue of its improper infringement notices and claims, caused streaming platforms Spotify, Apple Music, and likely other platforms to hold and freeze the royalty monies and funds that properly belong to PEG, GCM, and the third-party rights holders of the Licensed Recordings, on whose behalf PEG is lawfully authorized to act.

77.     43 North's improper infringement notices have also caused SoundExchange ("SX")[3] to freeze monies and royalties properly earned and owed to PEG and GCM.

---

[3] SX assigns unique identification numbers and codes to each master sound recording to identify whose recording was played thus earning digital performance royalties.  In this case, because 43 North has improperly claimed copyright ownership to master sound recordings that were merely licensed for use by 43 North, SX has held or frozen digital performance royalties that rightfully belong to PEG, the proper copyright holders, and owners of the Licensed Recordings.

78.     Specifically, PEG, through its authorized digital rights agent GAMC, entered into agreements with SX pursuant to which SX collects certain so-called digital performance royalties emanating from exploitation of the master sound recordings (as distinguished from musical compositions embodied in sound recordings) owned by PEG in the PEG Catalog, as well as exploitation of the music in the GCM Catalog (herein the "GAMC-SX Agreement").

79.     Importantly, PEG acknowledges that 43 North has its own rights to exploit the Licensed Recordings; however, such rights are subject to 43 North's obligations to account for and pay PEG the royalties specified and set forth in the 43 North-F2K APA and to enter into its own agreements with SX.

80.     43 North does not have the right, however, to claim exclusive rights or ownership of the Licensed Recordings to the detriment of PEG and the other rightful holders and non-exclusive owners of the Licensed Recordings, which 43 North does not exclusively own.

81.     43 North, as a non-exclusive licensee, is also not permitted to claim ownership rights to any sound recordings in either the PEG Catalog or the GCM Catalog.

82.     43 North does not have the right to falsely represent to SX or any third-party that 43 North (a) is the copyright owner of the master sound recordings comprising the Licensed Recordings or (b) that PEG, GCM, or any of their respective affiliates do not have the same non-exclusive right to exploit the Licensed Recordings in the same non-exclusive manner as that of 43 North.

83.     In light of 43 North's improper infringement notices to SX and the false allegations made, SX has refused to account to PEG (acting through its digital rights agent GAMC) for the potentially hundreds of thousands of dollars rightfully owed by SX to PEG and GCM.

84.     As noted, while 43 North does have some exclusive rights to other unrelated sound recordings, 43 North's improper claim of copyright ownership in the Licensed Recordings continues to cause *significant injury* to PEG and GCM.

85.     PEG has reason to believe, based on 43 North's (a) improper claim of title to the Licensed Recordings, (b) improper claim of ownership of master recordings in the PEG and GCM Catalogs, and (c) improper circulation of baseless infringement claims to streaming giant Spotify, that 43 North has, and continues to, circulate similar improper claims of exclusive ownership rights to various other music streaming platforms.

86.     43 North has tortiously interfered with (a) PEG's rights, (b) distributor RedEye's rights and distribution agreement with PEG's authorized digital rights agent GAMC, and (c) the rights of various third-party rights holders to certain master sound recordings.

87.     43 North's improper assertion of ownership rights in the Licensed Recordings constitutes a willful breach of the 43 North-F2K APA, as well as improper interference with PEG's rights as the licensing agent and administrator of both the PEG Catalog and the GCM Catalog.

88.     43 North is fully aware that it is merely a successor-in-interest to F2K's perpetual license and non-exclusive rights to the Licensed Recordings pursuant to the express terms and conditions of the 43 North-F2K APA.

89.     43 North is fully aware that, at no time, did 43 North obtain, purchase, or receive any copyright or ownership interest in either the PEG Catalog or the GCM Catalog.

### 43 North's Failure to Pay Agreed Upon Royalties

90.     As noted, pursuant to Sections 1.01(b) and (c) and Section 3.06 of the 43 North-F2K APA, 43 North became a successor-in-interest to the obligations PEG had with respect to the

various contracts and agreements that had been entered into by F2K, as set forth in Schedules 8, C, and D of the 43 North-F2K APA.

91.     First, Section 1.01(b) clearly states that 43 North had acquired certain "Recording Agreements and licenses with the recording artist [] listed on Schedule B (the "Artist Agreements") related" to the master sound recordings purchased by 43 North as part of the sales transaction.

92.     Second, pursuant to Section 1.01(c) and by virtue of the purchase transaction, 43 North became successor-in-interest to "All other agreements [] pertaining to" the master sound recordings as part of the purchase transaction," as memorialized in Exhibit C to the 43 North-F2K APA (i.e., the "Assignment and Assumption Agreement").

93.     Third, pursuant to Section 1.01(d) and by virtue of the purchase transaction, 43 North became successor-in-interest to "All agreements between [F2K] and Distributors for the exploitation [of the sound recordings] listed on Schedule D[,]" as memorialized in the Assignment and Assumption Agreement.

94.     Fourth, pursuant to Section 5.03(a) and by virtue of the purchase transaction, 43 North assumed "all third-party royalty obligations created by the [contracts] by virtue of the income derived" from the acquired sound recordings and exploitation of the Licensed Recordings pursuant to the non-exclusive licensed acquired by 43 North.

95.     43 North's royalty payment obligations were specifically noted, re-confirmed and conveyed to 43 North in writing in an October 13, 2015 letter from F2K to 43 North (requested by 43 North to be issued pursuant to the 43 North-F2K APA), which states that 43 North would be "solely responsible for and pay all royalties due to the respective artists [and that] it is hereby understood that [43 North] shall pay such royalties to the respective artists (or entities on their behalf) as part of its royalty accountings for the semi-annual period [.]"

96.     As a further example, 43 North has also failed to account to PEG and GCM and remit the requisite royalty payments for numerous sound recordings by the Archies, an American fictional rock band prominently featured in the Archies Comics series, which belong to GCM with PEG serving, again, as an authorized licensor.

97.     Indeed, the Archies recordings expressly appear on the list of music 43 North licensed on a non-exclusive basis in perpetuity, subject to 43 North's royalty payment and accounting obligations which 43 North brazenly continues to breach.

98.     Clearly, 43 North had assumed certain associated agreements that F2K had entered into with artists, producers, distributors, for the purpose of releasing sound recordings under one of several record labels.

99.     Clearly, 43 North also succeeded to, and were responsible for, compliance with all terms and conditions of the artist, distribution, and other agreements as set forth in Section 1.01 of the 43 North-F2K APA, including, without limitation, the obligation to remit royalty payments to third parties pursuant to such agreements.

## 43 North's Continued Breach and Improper Conduct

100.    As referenced above, Section 3.09 of the 43 North-F2K APA clearly states that F2K owned certain master sound recording and, relevant to this lawsuit, had a non-exclusive license to the Licensed Recordings.

101.    As such, it is improper and actionable for 43 North to breach the APA by (a) falsely asserting exclusive ownership to the Licensed Recordings, (b) improperly circulating infringement notices when 43 North was well-aware that it had acquired only a non-exclusive license to exploit the Licensed Recordings, and (c) tortiously and willfully interfering with the agreements entered into by PEG (acting through its digital rights agent GAMC) and its authorized distributor RedEye,

who is unable to perform its distribution obligations due to 43 North's improper conduct and efforts to improperly interfere.

102.    43 North's continued infringement notices to streaming platforms has, and continues to, significantly harm PEG and GCM, their sub-licensors, and authorized distributors.

103.    43 North continues to assert baseless allegations of ownership of the Licensed Recordings and continues to impermissibly exceed the scope of its license, and 43 North's breach, interference, and infringement notices are damaging PEG and interfering with RedEye Distribution's contractual and business relationships with Spotify and potentially other streaming platforms throughout the country.

104.    43 North has also intentionally failed to remit and pay royalties and other monies owed to PEG and its third-party rights holders emanating from the exploitation of the Licensed Recordings, despite having expressly assumed such payment obligations as part of the terms and conditions of the 43 North-F2K APA.

105.    As a result of 43 North's brazen conduct and false claims of right and title to sound recordings it does not own, 43 North is in breach of the relevant agreements and has intentionally diverted significant royalty streams and other monies from PEG, GCM, and third-party rights holders who are owed royalties pursuant to the various agreements 43 North assumed as part of the 43 North-F2K APA.

106.    PEG has made several attempts to discuss this issue and dispute with 43 North to no avail and, as such, PEG are forced to bring this action to remedy the improper conduct and to protect the rights of PEG and various third-party rights holders in PEG's capacity as the licensing agent and administrator of the Licensed Recordings.

## FIRST CAUSE OF ACTION
### Breach of Contract By Third-Party Beneficiary PEG

107.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

108.    PEG is a third-party beneficiary to the 43 North-F2K APA.

109.    Pursuant to the 43 North-F2K APA," 43 North acquired from F2K (a) certain sound recording assets, (b) certain rights related to certain master sound recordings, and (c) assumed F2K's contractual obligations with third-parties having an interest and royalty-bearing rights in and to the Licensed Recordings, which included the obligation to pay royalties to the Licensed Recordings owned by PEG and comprising the PEG Catalog.

110.    43 North has, and continues to, willingly and intentionally breach the terms and conditions of the 43 North-F2K APA by improperly asserting ownership and copyright claims to the Licensed Recordings and sound recordings comprising the PEG Catalog, when 43 North acquired only a non-exclusive right to exploit such recordings.

111.    43 North also continues to improperly claim ownership rights to sound recordings that are solely and exclusively owned by PEG and which comprise the PEG Catalog.

112.    43 North has engaged in the improper circulation of copyright infringement notices and claims circulated to several music streaming platforms, including Spotify and Apple Music, as well as to digital performance royalties collector and administrator SX, when 43 North is well-aware that they were only granted a non-exclusive and royalty-bearing right to exploit the Licensed Recordings comprising the PEG Catalog (as opposed to any right or claim to title or copyright ownership of the Licensed Recordings).

113.    PEG is the licensor and rights administrator to the Licensed Recordings, including sound recordings comprising the PEG Catalog.

114.    43 North's improper claims of copyright infringement and ownership of the Licensed Recordings and sound recordings owned by PEG constitutes a clear and intentional breach of the terms and conditions of the 43 North-F2K APA, of which PEG is a third-party beneficiary.

115.    43 North's improper claims of copyright infringement and ownership of the Licensed Recordings and sound recordings comprising the PEG Catalog constitutes a clear and intentional breach of 43 North's obligation to pay any and all royalties owed to PEG.

116.    43 North's breach of the royalty payment obligations expressly referenced in the 43 North-F2K APA is deliberate, willful, and in clear disregard of PEG's ownership and contractual rights and the third-party rights, titles, and ownership of the Licensed Recordings, including sound recordings comprising the PEG Catalog.

117.    43 North's blatant infringement has resulted in significant damages to PEG and has, additionally, resulted in a hold and "freeze" of royalty monies duly owed to both PEG and various third-party rights holders as set forth in the 43 North-F2K APA.

118.    43 North knowingly and intentionally continues to engage in improper conduct and seeks to gain a direct financial and competitive benefit from their infringement and their copyright infringement notices and claims circulated to streaming services and others who have unwittingly complied with 43 North's request to the detriment of PEG and lawful third-party rights holders and distributors.

119.    As the direct result of 43 North's improper conduct and breach, PEG has been significantly damaged and harmed in amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Breach of Contract By Third-Party**
**Beneficiary PEG As Authorized Licensing Agent of GCM**

120.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

121.    PEG is a third-party beneficiary to the 43 North-F2K APA and an authorized licensing agent of GCM, who is also a third-party beneficiary to the 43 North-F2K APA.

122.    Pursuant to the 43 North-F2K APA," 43 North acquired from F2K (a) certain sound recording assets, (b) certain rights related to certain master sound recordings, and (c) assumed F2K's contractual obligations with third-parties having an interest and royalty-bearing rights in and to the Licensed Recordings, which included the obligation to pay royalties to the Licensed Recordings owned by GCM and comprising the GCM Catalog.

123.    43 North has, and continues to, willingly and intentionally breach the terms and conditions of the 43 North-F2K APA by improperly asserting ownership and copyright claims to the Licensed Recordings and sound recordings comprising the GCM Catalog, when 43 North acquired only a non-exclusive right to exploit such recordings.

124.    43 North also continues to improperly claim ownership rights to sound recordings that are solely and exclusively owned by GCM and which comprise the CGM Catalog.

125.    43 North has engaged in the improper circulation of copyright infringement notices and claims circulated to several music streaming platforms, including Spotify and Apple Music, as well as to digital performance royalties collector and administrator SX, when 43 North is well-aware that they were only granted a non-exclusive and royalty-bearing right to exploit the Licensed Recordings comprising the GCM Catalog (as opposed to any right or claim to title or copyright ownership of the Licensed Recordings).

126.    PEG is the licensor and rights administrator to the Licensed Recordings, including sound recordings comprising the GCM Catalog.

127.    43 North's improper claims of copyright infringement and ownership of the Licensed Recordings and sound recordings owned by GCM constitutes a clear and intentional breach of the terms and conditions of the 43 North-F2K APA, of which GCM is a third-party beneficiary.

128.    43 North's improper claims of copyright infringement and ownership of the Licensed Recordings and sound recordings comprising the GCM Catalog constitutes a clear and intentional breach of 43 North's obligation to pay any and all royalties owed to GCM.

129.    43 North's breach of the royalty payment obligations expressly referenced in the 43 North-F2K APA is deliberate, willful, and in clear disregard of GCM's ownership and contractual rights and the third-party rights, titles, and ownership of the Licensed Recordings, including sound recordings comprising the GCM Catalog.

130.    43 North's blatant infringement has resulted in significant damages to GCM and has, additionally, resulted in a hold and "freeze" of royalty monies duly owed to both GCM and various third-party rights holders as set forth in the 43 North-F2K APA.

131.    43 North knowingly and intentionally continues to engage in improper conduct and seeks to gain a direct financial and competitive benefit from their infringement and their copyright infringement notices and claims circulated to streaming services and others who have unwittingly complied with 43 North's request to the detriment of GCM and lawful third-party rights holders and distributors.

132.    As the direct result of 43 North's improper conduct and breach, GCM has been significantly damaged and harmed at an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Declaratory Judgment**

133.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

134.    Pursuant to the 43 North-F2K APA, 43 North assumed and became the successor-in-interest to F2K's contractual obligations, including the obligation to pay royalties to PEG, GCM, and various third-party rights holders related to the Licensed Recordings.

135.    Pursuant to the 43 North-F2K APA, 43 North obtained a non-exclusive license in perpetuity to exploit the Licensed Recordings throughout the world, but at no time was 43 North granted any title, copyright, any other ownership interest in or exclusive rights of any kind or nature to the Licensed Recordings, including sound recordings comprising the PEG and GCM Catalogs.

136.    Despite the clear language of the 43 North-F2K APA, 43 North has taken the untenable position, as evidenced by the baseless infringement notices circulated by 43 North to streaming giant Spotify, that 43 North somehow had acquired lawful exclusive ownership and copyright interests in the Licensed Recordings, a position that is expressly and unequivocally contradicted by the 43 North-F2K APA (as 43 North is aware).

137.    An actual, substantial, and justiciable controversy thus exists between PEG and GCM, on the one hand, and 43 North, on the other hand, regarding whether 43 North owns and therefore holds, as it has maintained and alleged to others, exclusive ownership rights over the Licensed Recordings, which it does not.

138.    A judicial declaration is thereby necessary and vital to vindicate PEG's and GCM's legal rights and the rights of the third-parties regarding the Licensed Recordings.

139.    43 North knowingly and intentionally continues to engage in improper conduct and seeks to gain a direct financial benefit from their infringement, misrepresentations, false claims

and their copyright infringement notices and claims circulated to streaming services and others who have unwittingly complied with 43 North's request to the detriment of PEG and GCM and lawful third-party holders and distributors.

140.    Based on the foregoing, PEG respectfully requests a judicial declaration that (a) 43 North only negotiated for, and obtained, a non-exclusive license in perpetuity to the Licensed Recordings (including the sound recordings comprising the PEG and GCM Catalogs), (b) that 43 North has not obtained or purchased any title or ownership interests, including copyright interests, in or to the Licensed Recordings (including the sound recordings comprising the PEG and GCM Catalogs), and (c) that 43 North is required to account for and remit payment for all applicable third-party royalties and payments emanating from 43 North's exploitation of the Licensed Recordings (including the sound recordings comprising the PEG and GCM Catalogs), pursuant to the 43 North-F2K APA.

**FOURTH CAUSE OF ACTION**
**Tortious Interference With Contractual Relations**

141.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

142.    As referenced above, PEG (acting through its digital rights agent GAMC) has a valid and enforceable music distribution agreement with RedEye, the authorized distributor of the Licensed Recordings, including the sound recordings comprising the PEG Catalog and the GCM Catalog.

143.    The distribution agreement affords RedEye the exclusive right to distribute and exploit the Licensed Recordings to the fullest extent of PEG's rights.

144.    43 North's blatant and intentional breach of the terms and conditions of the 43 North-F2K APA and its improper claims of copyright and ownership of all right and title to the

Licensed Recordings, including sound recordings comprising the PEG Catalog and GCM Catalog, has interfered with the terms and conditions of the distribution agreement properly entered into by GAMC, PEG's authorized digital rights agent, and RedEye, the duly authorized distributor of the Licensed Recordings and of PEG and GCM-owned sound recordings.

145.    43 North's improper and false claims of copyright and exclusive ownership and 43 North's improper circulation of copyright infringement notices and claims to streaming platforms, including Spotify and Apple Music, have tortiously interfered with the rights that PEG properly granted to distributor RedEye pursuant to the distribution agreement.

**FIFTH CAUSE OF ACTION**
**Misrepresentation Under the DMCA**

146.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

147.    PEG is the licensing agent and administrator of the Licensed Recordings, acting on behalf of its own rights and those of GCM.

148.    43 North was granted a non-exclusive license to exploit the Licensed Recordings pursuant to the terms and conditions of the 43 North-F2K APA and, as such, does not have any title or copyright ownership interest in the Licensed Recordings, including sound recordings comprising the PEG and GCM Catalogs.

149.    43 North's false claims of copyright ownership of the Licensed Recordings has interfered with PEG's rights as the exclusive licensor and rights administrator to the Licensed Recordings, but 43 North has knowingly, intentionally, and materially misrepresented that 43 North owned the copyrights to the Licensed Recordings when it does not.

150.    43 North's improper copyright infringement notices and claims of exclusive ownership circulated to streaming platforms, including streaming giants Spotify, Apple Music, and

others, in addition to 43 North's improper claims to SX, were material and improperly claimed copyright and exclusive ownership rights when 43 North did not, in fact, own any such copyrights nor have exclusive ownership and title to any of the Licensed Recordings.

151.    PEG (via its digital rights representative GAMC) and the owners of the Licensed Recordings, including sound recordings comprising the PEG and GCM Catalogs, have suffered significant damages including, among other things, having their streaming and other royalties frozen indefinitely as a result of 43 North's improper copyright and exclusive ownership claims.

152.    PEG and GCM has suffered significant damages including, among other things, compensatory damages, reputational harm, and other consequential damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Conversion**

153.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

154.    PEG is the licensing agent and administrator of the Licensed Recordings and has a possessory right and interest in the Licensed Recordings, including the sound recordings comprising the PEG and GCM Catalogs.

155.    43 North was granted a non-exclusive license to exploit the Licensed Recordings pursuant to the terms and conditions of the 43 North-F2K APA and, as such, does not have any title, exclusive rights, or copyright or ownership interests in the Licensed Recordings.

156.    43 North has improperly exercised dominion and ownership rights over the Licensed Recordings and, as a result, has interfered with PEG's and GCM's rights.

157.    43 North has wrongfully claimed copyright and exclusive ownership interests in the Licensed Recordings that are under PEG's control and administration, thus interfering with

PEG's right to manage, control, and administer the Licensed Recordings, including the sound recordings comprising the PEG and GCM Catalogs.

158.    43 North's improper conduct constitutes an unauthorized exercise of control and ownership over the Licensed Recordings, when no such rights were granted to 43 North.

159.    By improperly claiming exclusive ownership of the Licensed Recordings and copyrights therein, 43 North has prevented PEG from exercising its rights as the rightful owner of the master sound recordings comprising the PEG Catalog and the GCM Catalog.

160.    By improperly claiming exclusive ownership of the Licensed Recordings and their copyrights, 43 North has prevented PEG, GCM, and other third-parties having underlying financial interests in the Licensed Recordings from fully exercising their respective rights in and reaping their benefits derived from the Licensed Recordings.

161.    By improperly claiming ownership of the copyrights and corresponding exclusive ownership rights, 43 North has prevented PEG from fully exercising its rights as the licensor and administrator (acting on behalf of its own interests and those of GCM) of the Licensed Recordings and has interfered with its ability to license the same and collect the requisite royalties owed by 43 North pursuant to the terms and conditions of the 43 North-F2K APA.

162.    PEG and GMC have been damaged and are entitled to compensatory damages, a permanent injunction enjoining 43 North from continued false claims of copyright and exclusive ownership interests in the Licensed Recordings, and a retraction of 43 North's improper and false copyright claim.

## SEVENTH CAUSE OF ACTION
### An Accounting

163.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

164.    PEG is the licensing agent and administrator of the Licensed Recordings, including the sound recordings comprising the PEG and GCM Catalogs.

165.    43 North was granted a non-exclusive license to exploit the Licensed Recordings pursuant to the terms and conditions of the 43 North-F2K APA and, as such, does not have any title, copyright or exclusive ownership interests in the Licensed Recordings.

166.    43 North was obligated to pay all royalty obligations pursuant to the terms and conditions of the 43 North-F2K APA.

167.    43 North has wrongfully claimed copyright and exclusive ownership interests and rights in the Licensed Recordings when no such rights were granted to 43 North and, in fact, 43 North does not have any title, exclusive ownership or copyright interests to the Licensed Recordings.

168.    43 North has failed to account for royalties owed to PEG, GCM, and third-party rights holders related to the exploitation of the Licensed Recordings and has intentionally misappropriated royalties owed to PEG, GCM, and third parties having royalty interests in the Licensed Recordings.

169.    PEG seeks an accounting of the royalties that 43 North has wrongfully and intentionally misappropriated in connection with (a) the Licensed Recordings, (b) the sound recordings owned by third parties, and (c) the sound recordings owned by PEG and GCM and comprising the PEG and GCM Catalogs.

## EIGHT CAUSE OF ACTION
### Injunctive Relief

170.    PEG repeats and incorporates by reference each and every allegation set forth above as if fully set forth herein.

171.    Pursuant to the 43 North-F2K APA, Defendant 43 North acquired from F2K (a) certain sound recording assets, (b) certain rights related to certain master sound recordings, and (c) assumed F2K's contractual obligations with third parties having interests in the Licensed Recordings, which included the obligation to pay royalties to parties entitled to them as a result of 43 North's use of the Licensed Recordings.

172.    43 North has, and continues to, willfully and intentionally breach the terms and conditions of the 43 North-F2K APA by improperly asserting ownership and copyright claims to the Licensed Recordings, when 43 North acquired only a non-exclusive right to exploit the Licensed Recordings subject to all expressly assumed ongoing royalty obligations.

173.    43 North also continues to improperly claim exclusive ownership rights to sound recordings that are owned by PEG and GCM and which collectively comprise the PEG and GCM Catalogs.

174.    43 North has engaged in the improper circulation of copyright infringement notices and claims of exclusive ownership, circulated to several music streaming platforms, including Spotify and Apple Music, as well as to digital performance royalties collector and administrator SX, when 43 North is well-aware that they were only granted a non-exclusive right to exploit the Licensed Recordings (as opposed to any right or claim to title or copyright interests in the Licensed Recordings).

175.    43 North's conduct constitutes unauthorized infringement of both PEG's owned master sound recordings, as well as infringement upon the rights of the various third-party owners of the Licensed Recordings.

176.    PEG seeks a permanent injunction enjoining 43 North from continued and false claims of copyright interests and exclusive ownership of the Licensed Recordings, including the sound recordings comprising the PEG and GCM Catalogs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and grant to Plaintiff the following relief:

1.    As to the First Cause of Action, compensatory damages for breach of contract in an amount to be determined at trial;

2.    As to the Second Cause of Action, compensatory damages for breach of contract in an amount to be determined at trial;

3.    As to the Third Cause of Action, a judicial declaration that:

(a)    43 North only negotiated for, and obtained, a non-exclusive license in perpetuity to the Licensed Recordings,

(b)    that 43 North has not obtained or purchased any title or ownership interests, including copyright interests, in or to the Licensed Recordings, and

(c)    that 43 North is required to account for and remit payment for all applicable third-party royalties and payments emanating from 43 North's exploitation of the Licensed Recordings pursuant to the 43 North-F2K APA;

4.    As to the Fourth Cause of Action, damages for tortious interference with business relations in an amount to be determined at trial;

5.    As to the Fifth Cause of Action:

(a) a permanent injunction prohibiting Defendant 43 North from further misrepresenting copyright interests and exclusive ownership claims regarding the Licensed

Recordings, including all sound recordings comprising the PEG Catalog, the GCM Catalog, or any sound recordings owned by third-parties, who are represented by PEG;

(b)  for actual and compensatory damages suffered by PEG resulting from Defendant 43 North's willful breach of contract and willful misrepresentation of 43 North's rights;

6.    As to the Sixth Cause of Action:

(a)  Compensatory damages against 43 North in an amount to be determined at trial representing the value of the converted property;

(b)  a permanent injunction enjoining Defendant 43 North from continuing to claim any ownership interest in the master sound recordings and Licensed Recordings at issue;

(c)  an order requiring that Defendant 43 North issue a public retraction of its improper copyright and exclusive ownership claims.

7.    As to the Seventh Cause of Action:

(a)  an accounting of all royalties and monies misappropriated by Defendant 43 North;

(b)  disgorgement of all misappropriated royalties and monies owed to PEG and third-party rights holders;

(c)  An order requiring Defendant 43 North to account for and pay PEG and third-party rights holders all royalty monies and payments owed to Plaintiff as mandated pursuant to the terms and conditions of the 43 North-F2K APA.

8.    As to the Eighth Cause of Action:

(a)  a permanent injunction enjoining Defendant 43 North, its officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with 43 North from further and continued acts of falsely claiming copyright and exclusive ownership interests, breach of contract, and tortious interference as set forth herein;

32

9.    As to All Causes of Action:

(a)  Pre-judgment and post-judgment interest to the extent allowable by law;

(b)  An award of PEG's costs and reasonable attorneys' fees in this action; and

(c)  Such other and further relief as the Court deems just and proper.


DATED: July 31, 2025


SOLER SALVA LLP


_____
Albert J. Soler (AS1974)
270 W. 39th St., Suite 1304
New York, NY 10018
Tel: (646) 660-1961
Email: asoler@solersalva.com